**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Fernando M. Izaguirre** | * |
| *On behalf of himself and others similarly situated* | * |
| | * |
|     Plaintiff | |
| | * |
| v. |     Case No. 1:18-cv-00965 (DLF) |
| | * |
| **Hunter Allied of Maryland, Inc. et al.** | |
| | * |
|     Defendant | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Plaintiff, by and through undersigned counsel, moves this Honorable Court to enter a default judgment in favor of the Plaintiff and against Defendants Hunter Allied of Maryland, Inc. and Bradford Ott (collectively "Defendants") and in support thereof, state as follows:

**I.**     **Standard of Review**

"Federal Rule of Civil Procedure 55(a) provides for default '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.' A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (*quoting Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971). "Upon request of the plaintiffs and an affidavit[sic] regarding the amount due, Rule 55(b) authorizes the clerk or court (depending on the circumstances) to enter against the defendant a default judgment for the amount claimed and costs. Fed R. Civ. P. 55(b). Just as a court can dismiss a case when faced with dilatory tactics by the plaintiffs, a court has the discretion to enter default judgment when a defendant fails to defend its case appropriately." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002) (*citing Keegel v. Key West &*

*Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C. Cir. 1980)).

When a default judgment is entered against a Defendant, liability is established for every well-pleaded allegation in the Complaint. *See Acosta v. Arlett*, 2018 WL 3688488 at *2 (D.D.C. Aug. 2, 2018) (*citing Flynn*, 237 F. Supp. 2d at 69). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Flynn*, 237 F. Supp. 2d at 69 (*citing Adkins*, 180 F. Supp. 2d at 17; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n. 27 (11th Cir. 1997); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). The Plaintiff must still prove its "entitlement to the requested damages" and may do so through affidavits or documentary evidence, although the Court may also choose to order an evidentiary hearing. *Flynn*, 237 F. Supp. 2d at 69 (*citing Oberstar v. FDIC*, 987 F.2d 494, 505 n. 9 (8th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111-12 (E.D.N.Y. 1997)).

## II.   Factual and Procedural Background

This lawsuit was initiated by Plaintiff Fernando M. Izaguirre on April 24, 2018 for unpaid overtime wages from Defendant Hunter Allied of Maryland, Inc., pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental claims pursuant to the District of Columbia Payment and Collection of Wages Law, D.C. CODE ANN. § 32-1301 *et seq.* ("DCPCWL"), and the District of Columbia Minimum Wage Revision Act, D.C. CODE ANN. § 32-1001 *et seq.* ("DCMWRA"). (ECF Doc. 1).

Plaintiff Izaguirre was employed by Defendants starting in August of 2017 as a non-exempt manual laborer for Defendants. He worked as a manual laborer at a work site in the District of Columbia for the refurbishment/repair of a government building. (ECF Doc. 1, ¶ 11-12). Plaintiff

was paid at a rate of $16.00/hour and at various times throughout his employment, worked in excess of forty (40) hours per week. (ECF Doc. 1, ¶13-14). Defendants, however, never paid Plaintiff overtime wages for all hours worked in excess of forty (40) at the statutorily prescribed amount of 1 ½ times Plaintiff's regular rate of $16.00/hour. (ECF Doc. 1, ¶ 15-16).

Defendants deliberately refused to pay overtime wages, and instead paid hours worked in excess of forty (40) at a straight time rate under the category of "expense reimbursement," even though Plaintiff never incurred any expenses on behalf of Defendants. (ECF Doc. 1, ¶18-19). In another instance, Defendants would shift hours worked in excess of forty (40) from one pay week to another pay week to mask that the hours worked had exceeded forty (40) for that week. (ECF Doc. 1, ¶26-28). Defendant was served on May 10, 2018. (ECF Doc. 3).

On June 19, 2018, Plaintiff filed a First Amended Collective Action Complaint and Class Action Complaint, turning the lawsuit into a collective action under the FLSA and a Rule 23 class action under the DCPCWL and DCMWRA. (ECF Doc. 4, ¶1). Additionally, Plaintiff's Amended Complaint added Bradford Q. Ott, the President and Owner of Defendant Hunter Allied, as a Defendant in the case. (ECF Doc. 4, ¶14). Defendant Ott had complete operational control and authority of Defendant Hunter Allied and its payroll and wage and hour practices and policies, and Plaintiff alleged that the Defendant Ott was jointly and individually liable for damages to Plaintiff, and other similarly situated workers. (ECF Doc. 4, ¶15-19).

Defendants did not file an Answer or otherwise respond to the Complaint or the Amended Complaint. Plaintiff therefore applied for a Clerk's Entry of Default on August 16, 2018 (ECF Doc. 10), which was entered on August 17, 2018 against both Defendants (ECF Doc. 11, 12). Plaintiff then filed a Motion for Conditional Certification (ECF Doc. 13), and a Motion for Pre-Certification Discovery (ECF Doc. 14). The Court granted the Motion for Conditional

Certification in part and denied it in part. Specifically, the Court only conditionally certified a class of construction workers who worked for Defendants from April 24, 2015 through the present, and had overtime hours paid at the worker's regular hourly rate as an "expense reimbursement," denying a class definition that included the shifting of overtime hours from one pay week to another. (ECF Doc. 15, pg. 5). The Court also denied without prejudice Plaintiff's Motion to Permit Pre-Certification Discovery on the grounds that it was premature. (ECF Doc. 15, pg. 8). On December 28, 2018, the Court issued a Minute Order ordering Defendants to produce the names and contact information for all employees who were eligible to participate as opt-in Plaintiffs by January 18, 2019. Plaintiff, out of an abundance of caution, employed a process server to personally serve Defendants with full and complete copies of the Court's Memorandum Opinion on the Motion for Conditional Certification, the Order granting the Motion for Conditional Certification, the Court's December 28, 2018 Minute Order, and the Court's December 31, 2018 setting of the deadline for production of employee contact information. (ECF Doc. 18, ¶ 2). The process server successfully served Defendants with the aforementioned documents. (ECF Doc. 18-2, 18-3).

Although Defendants received actual notice of the Court's Order, Defendants missed their deadline to produce employee contact information. Plaintiff therefore filed a Motion for Order Directing Defendants to Show Cause Why Defendants Should Not be Held In Civil Contempt. (ECF Doc. 19). The Court subsequently issued a Minute Order on April 19, 2019 setting an April 24, 2019 hearing on, among other things, the Motion for a Show Cause Order. Defendants failed to appear at the April 24, 2019 hearing, and the Court granted Plaintiff's Motion for a Show Cause Order on April 25, 2019. The Court's Show Cause Order for Contempt directed Defendants to appear in person before the Court on May 29, 2019. (ECF Doc. 22, pg. 1). Defendants, once

again, did not appear, and thus the Court issued an Order holding Defendants in civil contempt, and issuing a fine of $500 per day on Defendants if they failed to purge themselves of civil contempt within fourteen (14) days of the Order. (ECF Doc. 24, pg. 5).

Only when the threat of civil contempt and a financial penalty was levied against Defendants, did they make their first appearance in this case by filing a letter with the Court where they alleged that they attempted to contact Plaintiff's counsel on three different occasions to resolve the matter with no response, and now sought to do whatever was necessary to purge the Court's contempt order. (ECF Doc. 25). In light of this letter, the Court, on June 24, 2019, ordered the parties to meet and confer and file a status report by June 28, 2019. A status report was timely filed indicating that Plaintiff had received the employee contact information, and that they had begun discussions to seek a resolution to the case. (ECF Doc. 27). A second status report was filed by Plaintiff on July 12, 2019, where Plaintiff's counsel opined that they believed Defendants had purged themselves of contempt. (ECF Doc. 28, ¶4). The status report also indicated that the parties were exploring precertification settlement of just Plaintiff Izaguirre's claims due to the lack of numerosity in the putative class, and the financial health of Defendant Hunter Allied. (ECF Doc. 28, ¶5-7). The status report, however, also noted that Defendant Ott was scheduled to meet Plaintiff's counsel at his office on July 11, 2019 but did not appear. (ECF Doc. 28, ¶8). Nevertheless, Plaintiff requested until August 2, 2019 to attempt to reach an agreement with Defendants. (ECF Doc. 28, ¶9).

The parties exchanged a handful of communications back and forth in an attempt to reach a negotiated settlement, and there was enough promise of a possible resolution that Plaintiff requested an extension of the August 2, 2019 deadline to August 23, 2019. (ECF Doc. 29). However, after Plaintiff's requested the extension, Defendants began (once again) ignoring further

communications from Plaintiff.  As of the filing of this Motion, no settlement has been reached, and Plaintiff has not received a response from Defendant Ott in a number of weeks.

**III.    Argument**

The Plaintiff has pled, and Defendants have defaulted and thus admitted, all of the elements of an FLSA violation:  (1) that he performed work as an employee; (2) that Defendants were his employers; (3) that Defendants are a covered enterprise subject to the FLSA; and (4) that Defendants violated the FLSA, DCPCWL, and the DCMWRA by not properly paying Plaintiff overtime wages.  Defendants have defaulted on all of Plaintiff's plausible allegations.

Plaintiff's Complaint does not seek a specific sum.  However, the nature of this case lends itself to easy calculation and disposition of damages:

Plaintiff Izaguirre submits that he is entitled to unpaid overtime wages in the amount of $248.00.  Plaintiff alleges that he was promised an hourly wage of $16.00 per hour but was paid only straight wages for hours worked in excess of forty (40) hours per week, which was paid under the category of expense reimbursement.  In order to calculate damages, Plaintiff looked at how many dollars were paid to Plaintiff as expense reimbursements.  In 2017, $240.00 were paid to Plaintiff as expense reimbursements, and in 2018, $192.00 were paid to Plaintiff as expense reimbursements. (Exh. 1 & 2).  The total amount of expense reimbursements paid to Plaintiff was therefore $432.00.  Because Plaintiff alleges these overtime payments were paid as straight wages, dividing $432.00 by his straight wage of $16.00 per hour reveals 27 hours of overtime worked.

Additionally, Plaintiff alleges that that for the pay period of March 11, 2018 to March 17, 2018, four (4) hours were removed and instead shifted to the following pay period of March 18, 2018 to March 24, 2018.  Had these four hours remained in their original pay week, they would have also constituted overtime hours.  Therefore, those four (4) hours are added to the twenty-

seven (27) hours for a total of thirty-one (31) overtime hours.

Because no overtime premium was paid, Plaintiff is owed an additional $8.00 per hour of overtime, which is the additional fifty percent (50%) of his straight wage of $16.00 per hour. Therefore, taking this $8.00 per hour overtime premium and multiplying it by the thirty-one (31) hours of overtime hours worked, Plaintiff is entitled to $248.00.

Defendants are in default and have not offered any evidence to defend against statutory/liquidated damages under the FLSA, DCPCWL, and the DCMWRA. Accordingly, Plaintiff additionally seeks liquidated damages in an amount equal to three times the amount of unpaid overtime, for a sum of $744.00. Plaintiff, in total, seeks $992.00 in unpaid overtime and liquidated/statutory damages, plus attorneys' fees and costs. (Exh. 3).

**IV.     Pre-Certification Settlement and Lack of Numerosity**

There are four pre-requisites to maintaining a lawsuit as a Rule 23 class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Meijer, Inc. v. Warner Chilcott Holdings Co. Ill, Ltd*, 246 F.R.D. 293, 298 (D.D.C. 2007).

In the instant case, Plaintiff requests that the Court dismiss the putative Rule 23 claims, as investigation reveals that the requirement of numerosity is not met. As such, a class action (even by default) cannot be maintained. The information relied upon by Plaintiff is from Defendants' payroll processor. Upon review of payroll summaries for Defendants, it appears that the number of employees who would have even the remotest chance of being eligible for the class number less than fifteen (15), and that it is far more likely that eligible class members number less than ten

(10). There is evidence of other *potential* overtime violations (there exists "per diem" payments), but those claims – if they exist – are dissimilar from the Plaintiff's claims in this case.

While there is no hardline rule for how many putative class members must exist to sustain the numerosity requirement for a Rule 23 class action, Court's in this District appear to set the floor around twenty-five (25) or thirty (30). *See Equal Employment Opportunity Commission v. Printing Industry of Metropolitan Washington, D.C., Inc. (Union Emp. Division)*, 92 F.R.D. 51, 53 (D.D.C. 1981) ("Moreover, the Court notes that as few as 25-30 class members should raise a presumption that joinder would be impracticable, and thus the class should be certified."); *see also Meijer, Inc.*, 246 F.R.D. at 307 ("Although thirty is not a large number of class members, the Court nevertheless concludes that the numerosity requirement is satisfied in this case.").

Accordingly, Because the Rule 23 class action numerosity requirement cannot be met, no certification of a Rule 23 class is warranted. The default judgment relief sought herein, should therefore only apply to Plaintiff Izaguirre's claims, and the Plaintiff respectfully requests dismissal of the putative Rule 23 claims.[1]

### V.     **Attorneys' Fees/ Costs And Request to Maintain Jurisdiction to Issue Supplemental Fee In Connection With Post-Judgment Collection Efforts**.

It is well-established that under the FLSA, a prevailing plaintiff may recover attorneys' fees and costs. 29 U.S.C. § 216(b). Upon entry of Judgment, Plaintiff will file a motion seeking attorney fees/costs pursuant to Fed.R.Civ.P. 54(d).

---

[1]     Defendant Bradford Ott has refused to settle this case. As there is no settlement, the Court need not concern itself with whether the Plaintiff has unfairly used a putative Rule 23 claim to his settlement advantage.

Plaintiff further requests that the Court reserve jurisdiction to award *additional* attorneys' (supplemental attorneys' fees and costs), as it is anticipated that Defendants will make collection of the Judgment difficult in this case.  Indeed, Courts across numerous jurisdictions have supported post-judgment or supplemental attorneys' fees and costs.  *See Northcross v. Board of Education*, 611 F.2d 624, 637 (6th Cir. 1979); *Van Dyke v. BTS Container Service, Inc.*, Civ. No. 08-561-KI, 2010 WL 56109, *1 (D. Ore. Jan. 4, 2010) ("I conclude that the FLSA also allows me to award post-judgment collection fees.  Without such an award, a judgment is a hollow victory for a plaintiff who was improperly paid."); *Keith v. Volpe*, 643 F.Supp. 37, 41 (C.D. Cal. 1985) ("When statutory or equitable entitlement to court-awarded fees for legal work on the merits has been established, a court may award fees for time spent after final judgment monitoring and in other ways effectuating the judgment."); *Jackson, et al. v. Egira, LLC, et al.*, RDB-14-3114, 2016 WL 5815850, *4 n.5 (D. Md. Oct. 5, 2016) (awarding attorneys' fees without prejudice and retaining jurisdiction to award supplemental attorney's fees and costs for post-judgment enforcement under the FLSA).  Plaintiffs anticipate the need for post-judgment examinations and to take other collection efforts to enforce the right of the Plaintiff to collect upon this Judgment.[2]  *See Durham v. Jones*, 2012 WL 3985224, *10 (D. Md. Sept. 10, 2012) (Nickerson, J.) ("The Court will also retain jurisdiction to issue supplemental awards as may be appropriate under the circumstances.").

Defendants were served on May 10, 2018 but have yet to appear or properly defend themselves.  Defendants are not unaware of the lawsuit as they made an appearance to clear themselves of civil contempt but appear content to return to inaction now that the threat of civil contempt and a fiscal penalty has been lifted.  Defendants' retreat to silence suggests that collecting

---

[2] Plaintiff anticipates domesticating the Judgment in Maryland and conducting post-judgment collection efforts in Maryland.  However, Plaintiff would like the Court to leave open the possibility of a supplemental fee petition based on all collection efforts.

the Judgment may prove to be particularly onerous and possibly even the most time-consuming part of this case.

### VI. Conclusion

Accordingly, Plaintiffs seek a default judgment in the amount of $992.00 in total loss (compensatory & liquidated damages) from Defendants.

Alternatively, if it pleases the Court, the Plaintiffs request the Court enter an appropriate Order that the Plaintiffs recover damages from the defaulting Defendants in an amount to be determined based on the proof following an evidentiary hearing.

Respectfully submitted,

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq.
Hoffman Employment Law, LLC
Fed. Bar. No. 977135
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd of August, 2019, a copy of the Plaintiff's Motion for Default Judgment was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Columbia, and is available for viewing and downloading from the ECF system.

I hereby further certify that on this 23rd of August, 2019, a copy of the Plaintiff's Motion for Default Judgment or Notice of Settlement, together with attachments, was mailed via U.S. Mail, first class, postage prepaid, to the following Defendants:

> Hunter Allied of Maryland, Inc.
> c/o Bradford Q. Ott, resident agent
> 521 Tidewater CV
> Berlin, Maryland 21811
>
> Bradford Q. Ott
> 521 Tidewater CV
> Berlin, Maryland 21811

_____/s/_____
Howard B. Hoffman