UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FERNANDO M. IZAGUIRRE,

*Plaintiff*,

v.

HUNTER ALLIED OF MARYLAND, INC.,
*et al.*,

*Defendants.*

No. 18-cv-965 (DLF)

## MEMORANDUM OPINION

Before the Court is Fernando M. Izaguirre's Motion for Default Judgment, Dkt. 30. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

Hunter Allied of Maryland, Inc., is a construction company providing services within Washington, D.C., and Bradford Q. Ott is its president and owner. Am. Compl. ¶¶ 9–14, Dkt. 4. Izaguirre has worked at Hunter Allied since August 2017 with an hourly rate of $16.00. *Id.* ¶¶ 24–26.

Under the Fair Labor Standards Act ("FLSA"), the District of Columbia Payment and Collection of Wages Law ("DCPCWL"), and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), "employers" must compensate their "employees" for hours worked in excess of 40 hours per week at a rate "not less than" one and one-half times the employee's regular rate. 29 U.S.C. §§ 207(a)(1)–(2); D.C. Code § 32–1003(c).

Hunter Allied and Ott are employers as defined by the FLSA and D.C. law. Hunter Allied is an employer under the FLSA because it employs two or more people who handle goods

1

that traveled in or were produced for interstate commerce, Am. Compl. ¶ 9, and the annual gross volume of Hunter Allied's business has exceeded $500,000, *id.* ¶ 10. *See* 29 U.S.C. § 203(s)(1)(A)(i)–(ii). Ott is an employer because he is a corporate officer with "operational control of a corporation's covered enterprise." *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 143–44 (D.D.C. 2016) (holding corporate officer and corporation jointly and severally liable under the FLSA for unpaid wages). In determining whether a corporate officer is an employer, courts look at factors such as whether the individual "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) (internal quotation marks omitted). According to the complaint, Ott is the president and owner of Hunter Allied; he "maintains custody and control" of Hunter Allied's business records, and he possesses "the authority and discretion to fix, adjust, and determine hours worked and amounts paid with respect to employees at Hunter Allied." Am. Compl. ¶¶ 14–16. Both Hunter Allied and Ott are also employers under D.C. law because the D.C. statutes are construed consistently with the FLSA. *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 6 (D.D.C. 2010).

Izaguirre alleges that Hunter Allied and Ott failed to pay him overtime wages from 2017 through 2018. According to Izaguirre, when his work exceeded 40 hours per week, he would receive wages equal to his hourly wage rate instead of one and one-half of his hourly rate. Am. Compl. ¶ 28–30. He alleges that the defendants would sometimes classify these overtime wages

as "expense reimbursement" on his paychecks, and sometimes count his overtime hours from one week toward his regular hours the next week. *Id*. ¶¶ 32–38, 40–42.

Izaguirre filed suit on April 24, 2018, Dkt. 3, and has since amended the complaint as a collective action for overtime wages under the FLSA and as a class action for overtime wages pursuant to Rule 23 of the Federal Rules of Civil Procedure, the DCPCWL, and the DCMWRA. *Id*. ¶ 1. Following personal service of the complaint and the amended complaint upon Ott, the defendants failed to appear. Izaguirre then moved for an entry of default, Dkt. 10, and the Clerk entered default against the defendants, Dkt. 11; Dkt. 12. On November 13, 2018, the Court granted Izaguirre's Motion to Conditionally Certify a Fair Labor Standards Act Collective Action. Dkt. 15. The Court later ordered the defendants to produce "a computer-readable list of all employees who worked as hourly employees of Hunter Allied of Maryland, Inc., since April 24, 2015," by January 18, 2019. *See* December 28, 2018 Min. Order. After the defendants failed to respond, the Court held the defendants in civil contempt on May 29, 2019 for failing to comply with the Court's order. *See* Mem. Op. & Order, Dkt. 24. When the defendants produced the required records, the Court found that the defendants purged themselves of civil contempt and ordered the parties to meet and confer to attempt to reach an agreement. *See* July 15, 2019 Min. Order. Izaguirre now contends that the defendants have resumed ignoring his communications, *see* Mot. for Default J. at 5–6, and on August 23, 2019, he moved for a default judgment against Allied and Ott under Rule 55(b)(2) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure empower a federal district court to enter a default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While

3

federal policy generally favors resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quotation marks omitted).

Obtaining a default judgment is a two-step process. First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's default entry establishes the defaulting defendant's liability for the well-pleaded allegations of the complaint. *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted).

When ruling on a motion for default judgment, a court "is required to make an independent determination of the sum to be awarded." *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (quotation marks omitted). In that inquiry, the court has "considerable latitude." *Ventura*, 134 F. Supp. 3d at 103 (quotation marks omitted). The court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but the court is not required to do so "as long as it ensures that there is a basis for the damages specified in the default judgment," *Ventura*, 134 F. Supp. 3d at 103 (quotation marks and alterations omitted).

## III. ANALYSIS

Due to the Clerk's default entry in this case, Hunter Allied and Ott are deemed liable for the well-pleaded allegations in the complaint. *Providence Constr.*, 304 F.R.D. at 35. Those allegations establish that defendants violated the FLSA, the DCPCWL, and the DCMWRA when

4

they failed to pay Izaguirre overtime compensation by both counting these hours as "expense reimbursement[s]" and shifting them to subsequent weeks. Am. Compl. ¶ 31–43. With liability established, the Court must independently determine the amount owed by the defendants to the plaintiff.

As "employers," Hunter Allied and Ott are obliged to pay Izaguirre for time and a half for the hours he worked in excess of 40 hours per week. *See* 9 U.S.C. § 207(a); D.C. Code § 32–1003(c). Izaguirre seeks to recover the amount owed. In support of his motion for default judgment, Izaguirre has submitted (1) pay stubs relevant to the overtime hours at issue, Pl.'s Mot. Ex. 1, Dkt. 30-1; *id*. Ex. 2, Dkt. 30-2; and (2) a chart totaling the amount that should have been paid to Izaguirre as overtime wages as well as liquidated damages, *id*. Ex. 3, Dkt. 30-3. Izaguirre asserts that he was wrongfully paid $240.00 in 2017 and $192.00 in 2018 as "expense reimbursement[s]," for a total of $432. *See* Pl.'s Mot. at 6; *id*. Exs. 1–2. Dividing this number by his regular wage rate, $16.00, reveals that he worked 27 overtime hours that were noted as expense reimbursements. *Id.* at 6. He also claims that for the pay period from March 11, 2018 to March 17, 2018, four overtime hours were removed and shifted to the following pay period of March 18, 2018 to March 24, 2018. *Id*. In total, he estimates he worked 31 overtime hours. *Id.* at 6–7. He asserts that he is owed an additional $8.00 per hour in overtime pay (equivalent to 50% of $16.00, his straight wage pay), and multiplying the $8.00 by the 31 hours yields $248.00 in total overtime pay owed to him. *Id.* at 7.

The FLSA and the D.C. wage laws also entitle Izaguirre to recover liquidated damages along with his unpaid compensation. A plaintiff can recover liquidated damages equal to the amount of unpaid wages under the FLSA, *see* 29 U.S.C. § 216(b), and equal to "treble the amount of unpaid wages" under the D.C. laws, *see* D.C. Code §§ 32–1012; 32–1303. Since D.C.

law is more generous than FLSA, the Court will assess damages under D.C. law. *See Ventura*, 134 F. Supp. 3d at 104 (finding the plaintiff should be awarded treble damages when violations of FLSA and D.C. law are alleged). Therefore, Izaguirre shall be awarded $744.00 as liquidated damages.

In sum, the declarations and their accompanying exhibits establish that Hunter Allied owes the following amounts totaling $992.00:

- $248.00 for unpaid overtime wages, and
- $744.00 for liquidated damages.

Therefore, pursuant to FLSA 29 U.S.C. § 216(b) and D.C. Code §§ 32–1012; 32–1303, the Court concludes that the Izaguirre is entitled to a monetary judgment of $992.00.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Default Judgment. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

October 30, 2019